**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA**                              **CRIMINAL ACTION**

**VERSUS**

**ERSKIN O. CURTIS**                                           **NO. 06-0017-RET-DLD**

### NOTICE

  Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

  In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

  ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

**Signed in Baton Rouge, Louisiana, on December 10, 2009.**

            **MAGISTRATE JUDGE DOCIA L. DALBY**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | |
| **ERSKIN O. CURTIS** | **NO. 06-0017-RET-DLD** |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter comes before the Court on the motion of the defendant, Erskin Curtis, to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. The government has filed an opposition. There is no need for oral argument or for an evidentiary hearing.

In January, 2006, the defendant was charged, in an indictment including nineteen (19) other defendants, on multiple narcotics charges arising from an alleged cocaine and crack cocaine drug trafficking ring. On June 19, 2006, he pled guilty to one count of conspiracy to distribute and to possess with intent to distribute five (5) kilograms or more of cocaine and fifty (50) grams or more of cocaine base, a violation of 21 U.S.C. § 846, and one count of unlawful use of a communications facility, a violation of 21 U.S.C. § 843(b). As part of the plea agreement, the United States agreed to dismiss the remaining count charged against the defendant of possession of a firearm in furtherance of a drug trafficking offense, a violation of 18 U.S.C. § 924(c).

A Presentence Investigation Report ("PSR") was issued on March 6, 2007, pursuant to which the defendant's base offense level was calculated at 34, based upon a finding of 26 kilograms of cocaine. An additional two (2) points were added to the base offense level based upon the defendant having possessed a firearm during a drug transaction. After a three-level downward adjustment for acceptance of responsibility, the defendant was assessed a base offense level of 33, with a guideline range of 168-210 months. The mandatory minimum term of imprisonment under 21 U.S.C. § 841(b)(1)(A) was ten (10) years of imprisonment.

The defendant filed two objections to the PSR, in both of which he objected to the amounts of cocaine attributed to him in the PSR.  Specifically, he complained of the inclusion of eighteen (18) kilograms of cocaine, which inclusion was based upon information provided by an informant. The defendant asserted that, inasmuch as the informant was then deceased, his statements should not be utilized against the defendant because the informant's statement could not be subjected to cross-examination.

At the sentencing hearing held on July 19, 2007, the defendant's attorney addressed the referenced objections.  In doing so, he acknowledged, correctly, that the Court was entitled to consider any reliable statements in evaluating the offense level calculation contained in the PSR. The defendant's attorney further asserted, however, that he and the defendant had been surprised by the informant's statements contained in the PSR because they had not known of these statements when they entered the guilty plea, and they urged the Court to consider the asserted lack of credibility of the statements in reaching its determination.

Also at the sentencing hearing, the United States filed a motion for reduction of the defendant's sentence under USSG § 5K1.1, recommending a three-level reduction in the defendant's guideline range based on the defendant's cooperation, resulting in a proposed guideline range of 121 to 151 months.  The United States further recommended a sentence at the lower end of this guideline range.  The district court granted the United States' motion for reduction and adopted the new guideline range, but rejected the recommendation for a sentence at the lower end of this range.  Instead, relying on the sentencing factors set forth in 18 U.S.C. § 3553(a), specifically the seriousness of the defendant's conduct in importing large amounts of drugs into the community, together with the defendant's criminal history which included 22 arrests on various serious charges, the court found that a sentence at the higher end of the range was more appropriate.  Accordingly, the court sentenced the defendant on July 26, 2007,  to 151 months in prison on the conspiracy charge and 48 months in prison on the communications charge, with these

sentences to run concurrently. In addition, the Court imposed a subsequent five-year and one-year concurrent term of supervised release on the respective counts.

On April 15, 2008, the defendant filed the instant motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. The defendant asserts that he was provided with ineffective assistance of counsel and that, as a result, his guilty plea was not freely and voluntarily given. Specifically, the defendant contends that his attorney failed to understand or adequately inform him of the nature and elements of the charges to which he was pleading guilty, failed to inform him that he would be accountable for all drugs found to be involved in the alleged conspiracy, failed to adequately explain the effect of United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), failed to explain that he could be subjected to a two-point enhancement for possession of a firearm, failed to explain the written plea agreement, and failed to advise him that he was relinquishing his right to appeal by signing the plea agreement. In addition, the defendant contends that his attorney promised him that he would be given a sentence of only ten (10) years in confinement and advised him to consent to everything asked of him at the plea colloquy, "because all had been agreed upon and it was just a formality", notwithstanding any conflict with the defendant's personal understanding.

## The Guilty Plea Colloquy

At the defendant's re-arraignment, pertinent portions of the indictment were read into the record. Further, the defendant's plea agreement was read into the record, and he testified in open court that he had received and gone over a copy of the plea agreement with his attorney, had signed his name thereto, and wished to plead guilty to the charges levied against him. In addition, the pertinent portions of the federal criminal statutes were read in open court, and the trial judge explained the nature of the charges to the defendant, and the defendant indicated that he understood same. The factual predicate for the indictment, contained in the plea agreement and reflecting what the United States would plan to prove at trial, was also read in open court, and the

defendant affirmed that the predicate was factually correct and that he was guilty of the facts stated therein.[1]  He further testified that he was satisfied with his attorney's services, that his attorney was following the defendant's express instructions, and that there was nothing additional which he wished for his attorney to have done.  He also testified that no one had threatened him or forced him to plead guilty, that no one had promised him what his sentence would be, and that it was his own decision to plead guilty.

The trial judge also explained to the defendant the rights which he was giving up by entering into the instant plea, including inter alia the right to a trial before a jury of his peers, to confront and cross-examine the witnesses against him, and to compel the government to establish his guilt beyond a reasonable doubt.  In addition, the trial judge explained that the defendant's written plea agreement expressly relinquished his right to an appeal except under certain narrow circumstances not pertinent here, and relinquished his right to collaterally attack his convictions and sentence after the finality thereof under 28 U.S.C. § 2255.

Finally, consistent with Rule 11 of the Federal Rules of Criminal Procedure, the trial judge explained to the defendant the maximum punishments that he could receive.  Specifically, the judge informed the defendant that the mandatory minimum sentence on the conspiracy charge was ten (10) years in confinement and that the maximum sentence was life imprisonment, and that the maximum sentence on the communications facility charge was not more than four (4) years, with potential fines totaling $4,000,000.00 and $250,000.00, respectively, with two (2) mandatory special assessments of $100.00 each, and with mandatory supervised relief periods of at least five (5) years and one (1) year, respectively.  The judge further expressly informed the defendant that the Court would take the sentencing guidelines under consideration in arriving at an appropriate

---

[1] The record indicates that there was some initial hesitation on the part of the defendant relative to pleading guilty to the second count in the indictment, i.e., to the use of a communications facility, but after conferring privately with his attorney for several minutes, the defendant reaffirmed his wish to plead guilty to this charge.

sentence but was not obligated to follow same, that the Court would defer sentencing until after preparation and dissemination of a pretrial sentencing report, and that any assurances regarding any particular sentence could not be relied upon because even the Court did not know what the sentence would be, having made no decision whatever with respect thereto.  Specifically, the Court stated:

> The actual sentence that will be imposed ... will be determined after the Court considers United States Sentencing Guidelines....  I'm not required to follow the sentencing that is recommended by the Guidelines.  Once I consider the Guidelines and the sentencing factors contained in the Guidelines, the law provides that I can impose whatever sentence I find to be appropriate given those considerations.  That means that if your lawyers or anyone else tried to tell you or give you some idea of the type of sentence that you could expect to receive in this case after these guilty pleas, they can't do that because they don't know what I'm going to do, and I know they don't know what I'm going to do because I don't know what I'm going to do yet until after I consider the Guidelines.

Finally, the trial judge advised the defendant that the convictions could be used against him to enhance his sentence in subsequent criminal proceedings.  The defendant signified in open court that he understood and acquiesced to all that the trial court had stated.

## Legal Analysis

To obtain collateral relief pursuant to 28 U.S.C. § 2255, a defendant "must clear a significantly higher hurdle" than the standard that would exist on direct appeal.  United States v. Frady, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).  When a defendant has been convicted and his conviction has been upheld on direct appeal, there is a presumption that the defendant's conviction is fair and final.  United States v. Cervantes, 132 F.3d 1106 (5th Cir. 1998). "As a result, review of convictions under § 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice."  Id.  Of course, this procedural bar does not apply to claims that could not have been raised on direct appeal, such as those for ineffective assistance of counsel. See Massaro v. United States, 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003) (holding that ineffective-assistance claims are properly raised on collateral review and are not procedurally

barred by a failure to raise them on direct appeal).  Further, although "an informed and voluntary waiver of post-conviction relief is effective to bar such relief," United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994), an exception to this rule is where asserted ineffective assistance of counsel "directly affected the validity of that waiver or the plea itself."  United States v. White, 307 F.3d 336 (5th Cir. 2002).

The defendant's contention in this case is solely that he was provided with ineffective assistance of counsel in several particulars relative to his plea agreement.  In this regard, the Court first notes that a valid guilty plea waives all non-jurisdictional defects, including an ineffective-assistance-of-counsel claim, unless the ineffective-assistance claim affects the voluntariness of the plea.  Smith v. Estelle, 711 F.2d 677 (5th Cir. 1993), cert. denied, 466 U.S. 906, 104 S.Ct. 1685, 80 L.Ed.2d 159 (1984).  Further, a habeas defendant who claims ineffective assistance of counsel must affirmatively demonstrate:

(1) That his counsel's performance was "deficient", i.e., that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and

(2) That the deficient performance prejudiced his defense, i.e., that counsel"s errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable.

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  The defendant must make both showings in order to obtain habeas relief based upon alleged ineffective assistance of counsel.  Id.

To satisfy the deficiency prong of the Strickland standard, the defendant must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards.  See, e.g., Martin v. McCotter, 796 F.2d 813 (5th Cir. 1986), cert. denied, 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 985 (1987).  The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be

considered sound trial strategy. See, e.g., Bridge v. Lynaugh, 838 F.2d 770 (5th Cir. 1988). This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. Martin, supra, 796 F.2d at 817. Great deference is given to counsel's exercise of professional judgment. Bridge, supra, 838 F.2d at 773; Martin, supra, 796 F.2d at 816.

If the defendant satisfies the first prong of the Strickland test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors. Earvin v. Lynaugh, 860 F.2d 623 (5th Cir. 1988), cert. denied, 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 861 (1989). To satisfy the prejudice prong of the Strickland test, it is not sufficient for the defendant to show that the alleged errors had some conceivable effect on the outcome of the proceeding. Strickland, supra, 466 U.S. at 693, 104 S.Ct. at 2067. Rather, the defendant must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. Martin, supra, 796 F.2d at 816. The habeas defendant need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." Id. at 816-17.

The above showing is one that the defendant cannot meet in the instant case. Specifically, the record of this case, together with the defendant's testimony at the re-arraignment colloquy, clearly establishes that the defendant's decision to plead guilty was his own and that it was entirely voluntary.

To be constitutionally valid, a guilty plea must be knowing and voluntary. Harmason v. Smith, 888 F.2d 1527 (5th Cir. 1989). On the other hand, a defendant ordinarily will not be heard to refute his testimony given at a plea hearing while under oath. United States v. Cervantes, 132 F.3d 1106 (5th Cir. 1998), citing United States v. Fuller, 769 F.2d 1095 (5th Cir. 1985). "Solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d

136 (1977). Indeed, the Fifth Circuit accords "great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302 F.3d 279 (5th Cir. 2002). And any documents signed by the defendant in connection with a guilty plea are entitled to "great evidentiary weight." United States v. Abreo, 30 F.3d 29 (5th Cir.), cert. denied, 513 U.S. 1064, 115 S.Ct. 681, 130 L.Ed.2d 613 (1994).

In the instant case, the defendant's sworn statements at his re-arraignment provide persuasive evidence that he fully understood the nature of the charges against him and the rights he was giving up under the plea agreement, including his right to an appeal. The defendant admitted at the plea colloquy that he had gone over the plea agreement with his counsel and that he wished to plead guilty to the charges in accordance with the plea agreement. He reaffirmed his desire to plead guilty after the reading of the indictment in open court, and he signified his understanding of the charges after explanation thereof by the district judge. Finally, he affirmatively asserted that he was satisfied with the assistance of his attorney, that he had not been coerced or forced to plead guilty, that the decision to plead guilty was his own (after consultation with his attorney), and that he had not been promised any particular length of sentence by his attorney or by anyone else. These statements, made under oath, provide compelling evidence of the voluntariness of the defendant's plea.

Turning to the defendant's individual claims, his first contention is that his attorney failed to adequately understand and explain the charges and the details of the plea agreement, including the defendant's relinquishment of his right to appeal. The Fifth Circuit has held that a guilty plea form is prima facie evidence that a defendant has been informed of the elements of the crime charged. Bonvillain v. Blackburn, 780 F.2d 1248 (5th Cir.), cert. denied, 476 U.S. 1143, 106 S.Ct. 2253, 90 L.Ed.2d 699 (1986). Further, the defendant bears the burden of proving that he was not adequately informed of the nature of the charges to which he pled guilty, id., and in the instant case, the defendant has offered nothing in support of this claim other than his own self-serving and

conclusory assertions. He was represented by counsel at all stages of the proceedings, and it is normally presumed that counsel has adequately explained the nature of the charges to his client. See Henderson v. Morgan, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976) ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit"). Moreover, it is clear from the re-arraignment colloquy that both the indictment and the signed guilty plea form were read into the record, and that the defendant was aware that he was charged with engaging in a conspiracy to possess and distribute cocaine and with utilizing a communications facility in the commission of a felony. These charges are not conceptually difficult to understand, and the elements thereof are largely self-evident. Moreover, even if, as the defendant asserts, his attorney failed to advise him regarding certain aspects of the case, the district court thereafter adequately instructed the defendant relative to the charges and proceedings, and further explicitly advised the defendant regard his relinquishment of the right to appeal. Even misstatements by a defendant's attorney are not necessarily sufficient to show prejudice where the sentencing judge's instructions and explanations thereafter cure any potential misstatement. See Bonvillain v. Blackburn, supra. Accordingly, the Court finds no merit in the defendant's assertion that his attorney failed to adequately explain the nature of the charges and proceedings and the rights which the defendant was relinquishing by pleading guilty.

The defendant also contends that his guilty plea was not knowing and voluntary because he was not made aware of a potential enhancement based upon the quantity of drugs found by the Court to have been involved in the conspiracy and of a potential enhancement for possession of a firearm. There is no dispute, however, that prior to acceptance of the plea, the Court advised the defendant regarding the maximum prison term and fine which the defendant faced for the offenses charged, which is all that is technically required in order for the defendant to have been informed of the "consequences of a guilty plea". United States v. Rivera, 898 F.2d 442 (5th Cir. 1990). The

mere fact that the defendant was unaware of the potential firearm enhancement or the potential enhancement based on the quantity of drugs attributed to him does not render his plea unknowing or involuntary. See United States v. Minotta-Gonzalez, 232 F.3d 208 (5th Cir. 2000)("Due process does not mandate ... either notice, advice, or a probable prediction of where, within the statutory range, the guideline sentence will fall"); Stinnett v. United States, 2007 WL 2375765 (N.D. Tex., August 16, 2007). See also Barbee v. Ruth, 678 F.2d 634 (5th Cir.), cert. denied, 459 U.S. 867, 103 S.Ct. 149, 74 L.Ed.2d 125 (1982). Further, at least one court in this Circuit, in agreement with other courts which have addressed this issue, has found that there is no ineffective assistance of counsel where the defendant's attorney has failed to warn of possible enhancements under the Sentencing Guidelines. See United States v. Collins, 2009 WL 910842 (S.D. Miss., April 1, 2009). See also Thomas v. United States, 27 F.3d 321 (8th Cir. 1994)(finding that, inasmuch as a district court is only required to advise a defendant of the maximum and minimum sentences which he faces, and is not required to inform the defendant that the applicable Sentencing Guideline range may include enhancements based upon findings of relevant conduct, the failure of an attorney to inform his client of possible enhancements does not show that the attorney's representation has fallen below an objective standard of reasonableness, particularly where the court has advised the defendant that the ultimate sentence will be determined only after receipt and review of a PSR.). Accordingly, there can be no finding in the instant case that the defendant's attorney provided ineffective assistance of counsel for failing to advise of possible enhancements under the Sentencing Guidelines, and this claim must be rejected.

The defendant also suggests that his plea was entered into without his understanding of, and in violation of United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), because the court calculated his Sentencing Guidelines range on the basis of facts – the amount of drugs involved in the conspiracy and the defendant's possession of a firearm – which were not found by a jury or admitted by him. This claim is also without merit. The United States Supreme

Court in Booker held that the Sentencing Guidelines are advisory only, effectively eliminating the Sixth Amendment concerns arising where a sentencing court finds facts relevant to sentencing within the statutory punishment range. See United States v. Prodencio, 250 Fed.Appx. 43 (5th Cir. 2007), cert. denied, ____ U.S. ___, 128 S.Ct. 1687, 170 L.Ed.2d 381 (2008), and United States v. Mares, 402 F.3d 511 (5th Cir.), cert. denied, 546 U.S. 828, 126 S.Ct. 718, 163 L.Ed.2d 615 (2005). Indeed, the Booker Court explicitly stated, "when a trial judge exercises his discretion to select a specific sentence within a defined [statutory] range, the defendant has no right to a jury determination of the facts that the judge deems relevant." Id. In the instant case, the defendant was specifically advised at the re-arraignment colloquy that a violation of the conspiracy charge carried a statutory mandatory minimum sentence of ten (10) years and a statutory maximum potential sentence of life imprisonment. Inasmuch as the defendant received a sentence which was within this statutory range, the court was within its constitutional authority in finding the facts that led to the discretionary sentence within the statutory range. Accordingly, no Booker violation occurred in this case.

Finally, the defendant contends that his guilty plea was involuntary because it was based upon a promise by his attorney that he would receive a sentence of only ten (10) years in confinement. In this regard, a facially valid guilty plea may nonetheless be found to be invalid if it was induced by the defendant's attorney's unkept promises. Harmason v. Smith, 888 F.2d 1527 (5th Cir. 1989). In order to seek habeas relief on the basis of alleged promises, however, the defendant is required to establish (1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise. United States v. Cerantes, 132 F.3d 1106 (5th Cir. 1998). "If the defendant produces independent indicia of the likely merit of [his] allegations, typically in the form of one or more affidavits from reliable third parties, [he] is entitled to an evidentiary hearing on the issue." Id. If, however, the defendant's "showing is inconsistent with the bulk of [his] conduct or otherwise fails

to meet [his] burden of proof in the light of other evidence in the record, an evidentiary hearing is unnecessary." Id.

The defendant has not satisfied the enumerated requirements stated above. In the first place, although he has made the conclusory assertion in his pleadings that his attorney promised him a sentence of no more than ten (10) years, his pleadings are unsworn, and he provides no information on his own behalf as to where and when the alleged promise was made to him. Further, the Court finds that the "declaration" which the defendant has attached to his application is lacking in sufficient indicia of reliability to justify an evidentiary hearing.[2] This declaration, which appears to have been prepared on the same typewriter or word processor as was utilized by the defendant in preparing his pleadings, is signed by the defendant's wife, Tommiesaine Carter, and states, under penalty of perjury, that the defendant's attorney, "personally promised [the defendant] he would get 10 years prison time after the plea was agreed upon." The declaration further asserts that, "[t]his promise was made on or about January 4, 2005 at our home at 1765 North 41st Street, Baton Rouge, Louisiana."

The declaration made by the defendant's wife is frankly unbelievable. According to this declaration, the defendant's attorney promised, at the defendant's residence on January 4, 2005, that the defendant would receive a ten-year sentence in confinement upon the entry of a guilty plea. The record reflects, however, that the indictment charging the defendant was not signed and returned by the federal Grand Jury until January 25, 2006, more than a year after the purported conversation took place.[3] It is inconceivable that the defendant could have had a conversation with

---

[2]   In his pleadings, the defendant refers to a second affidavit which is purportedly attached to his motion to vacate, set aside or correct his sentence. It does not appear, however, that a second affidavit was attached to the defendant's motion.

[3]   With regard to the significance of the date contained in the defendant's wife's declaration, it appears from the indictment that the defendant was in fact stopped by authorities on that date, January 4, 2005, and was found to be in possession of a firearm and $49,040.00 in currency. The indictment indicates that the "currency was seized by law enforcement officers."

his attorney and been promised a particular length of sentence more than a year before there was even an indictment charging him with one or more federal crimes. In the absence of knowledge regarding what crimes would be charged against the defendant, there can have been no basis for any promise of a particular sentence. The defendant was not arrested until January 28, 2006, several days after issuance of the indictment, and on March 8, 2006, with the consent of his attorney, the defendant participated in an interview with federal prosecutors, apparently seeking to cooperate with the federal investigation. It was not until June 21, 2006, that the defendant entered a Notice of Intent to Enter Plea, and the plea agreement itself reflects that the Government was prepared to prove that the conspiracy with which the defendant was charged was ongoing between June, 2003, and January, 2006, and so was ongoing for a year <u>after</u> the purported conversation took place. There is simply no basis for believing that such a conversation took place on the date indicated or that such a promise was made at that time. Accordingly, the Court finds that the defendant has not produced "independent indicia of the likely merit of [his] allegations" so as to warrant an evidentiary hearing in connection with this claim.

      Moreover, even if the defendant could be found to have satisfied the requirements set forth in <u>United States v. Cerantes</u>, <u>supra</u>, the Court nonetheless finds that the defendant still would not be entitled to an evidentiary hearing because the record in this case does not support his allegations. By signing the plea agreement, the defendant expressly acknowledged therein that his ultimate sentence was uncertain. At the re-arraignment hearing, the Court fully admonished the defendant regarding the charges against him and the maximum punishment he faced. The defendant told the Court that he understood the charges and the potential punishment. Also at re-arraignment, the Court explicitly informed the defendant that the Court had made no decision regarding the sentence that would be imposed and stated that no decision would be made until after review of the PSR. The defendant stated that he understood the uncertainty of his sentence and further asserted that no one had made any promises to him regarding the length of sentence

he was to receive. Finally, upon review of the PSR and its recommended sentence of between 168 and 210 months (subsequently reduced at the sentencing hearing to between 121 and 151 months, based upon a motion by the Government), and after entry of the sentence of 151 months, the defendant made no complaint and made no attempt to seek new counsel or to withdraw his plea as might reasonably be expected if his contentions were true. In sum, there is nothing in the record, in the defendant's conduct, or in the defendant's present pleadings, which persuades the Court that the Court should accord the defendant's present assertions greater weight than his sworn statement given at the re-arraignment hearing.

Based upon the foregoing, the defendant has failed to establish the violation of his constitutional rights in connection with his convictions and sentence. Therefore, the defendant is not entitled to relief under 28 U.S.C. § 2255, and his application should be denied.

### Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255, "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). Although the defendant has not yet filed a notice of appeal, the Court may address whether he would be entitled to a certificate of appealability. See Alexander v. Johnson, 211 F.3d 895 (5th Cir. 2000). A certificate of appealability may issue only if the defendant has made a substantial showing of the denial of a constitutional right. In cases where the Court has rejected the defendant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). In the instant case, the Court finds that reasonable jurists could not debate the denial of the defendant's § 2255 application, nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). Accordingly,

it is appropriate that, in the event that the defendant seeks to pursue an appeal in this case, a certificate of appealability should be denied.

RECOMMENDATION

It is recommended that the defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 be dismissed, with prejudice.   It is further recommended that, in the event that the defendant seeks to pursue an appeal, a certificate of appealability should be denied.

Signed in Baton Rouge, Louisiana, on December 10, 2009.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**